THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division



UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 4:13cr72(1)

ANTONIO JERROD FULLER,

   Defendant.

*MEMORANDUM ORDER*

Before the Court is Defendant Antonio Jerrod Fuller's Motion for Judgment of Acquittal. ECF No. 186. Defendant was convicted by a jury on July 16, 2014 of eight counts, including racketeering conspiracy, narcotics conspiracy, murder in aid of racketeering, attempted murder in aid of racketeering, and various firearm offenses. Defendant now contends that a judgment of acquittal is warranted on all charges pursuant to Federal Rule of Criminal Procedure 29 because of insufficient evidence, government misconduct, and evidentiary error. In the alternative, he requests a new trial pursuant to Federal Rule of Criminal Procedure 33. For the reasons stated below, Defendant's motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On July 17, 2013, Defendant was named in fourteen counts of a nineteen count Indictment. On November 12, 2013, Defendant was named in fourteen counts of a Superseding Indictment and was charged as follows:

- Count 1: Racketeering Conspiracy, 18 U.S.C. § 1962(d)
    - Racketeering Act One: Conspiracy to Distribute Drugs
    - Racketeering Act Two: Murder of Andre Horton on May 17, 2009
    - Racketeering Act Three: Murder of Julius Johnson on May 17, 2009
    - Racketeering Act Four: Attempted Murder of Edwin Powers on May 17, 2009

- o Racketeering Act Five: Murder of Christian Hatch on November 4, 2009
- o Racketeering Act Six: Attempted Murder of Desmond Finnell on November 4, 2009

- Count 2: Drug Conspiracy, 21 U.S.C. § 846

- Count 3: Murder in Aid of Racketeering Activity (Andre Horton), 18 U.S.C. § 1959(a)(1)

- Count 4: Use of Firearm Resulting in Death (Andre Horton), 18 U.S.C. § 924(c)(1), (j)

- Count 5: Murder in Aid of Racketeering Activity (Julius Johnson), 18 U.S.C. §1959(a)(1)

- Count 6: Use of Firearm Resulting in Death (Julius Johnson), 18 U.S.C. § 924(c)(1), (j)

- Count 7: Attempted Murder in Aid of Racketeering Activity (Edwin Powers), 18 U.S.C. § 1959(a)(5)

- Count 8: Use of Firearm in a Crime of Violence (Edwin Powers), 18 U.S.C. § 924(c)(1)

- Count 9: Felon in Possession of a Firearm (stemming from the conduct charged in Counts 3 through 8), 18 U.S.C. § 922(g)(1)

- Count 11: Murder in Aid of Racketeering Activity (Christian Hatch), 18 U.S.C. § 1959(a)(1)

- Count 12: Use of a Firearm Resulting in Death (Christian Hatch), 18 U.S.C. § 924(c)(1), (j)

- Count 13: Attempted Murder in Aid of Racketeering Activity (Desmond Finnell), 18 U.S.C. § 1959(a)(5)

- Count 14: Use of a Firearm in a Crime of Violence (Desmond Finnell), 18 U.S.C. § 924(c)(1)

- Count 15: Felon in Possession of a Firearm (stemming from the conduct charged in Counts 11 through 14), 18 U.S.C. § 922(g)(1)

The jury trial began on July 1, 2014. On July 14, 2014, the Government concluded its presentation of evidence. Defendant moved for a judgment of acquittal as to all counts. The Court granted this motion as to Counts 3 through 8, reasoning that the Government had failed to prove the required element of the (Attempted) Murder in Aid of Racketeering charges that the Defendant committed the acts "for the purpose of gaining entrance to or maintain or increasing

2

position in an enterprise." 18 U.S.C. § 1959(a)(1). Because the firearm charges in Counts 4, 6, and 8 explicitly incorporated the murder in aid of racketeering charges in Counts 3, 5, and 7, the Court also dismissed those counts. The Court heard argument but deferred ruling as to whether the murders and attempted murder forming the basis of Counts 3, 5 and 7 should nonetheless remain as charged racketeering acts in Count 1. Defendant then presented its case, and also rested on July 14.

Both the Government and Defendant submitted case law and other authority on the issue of inclusion of the racketeering acts related to the dismissed counts, and on July 15, 2014, the Court informed the parties that it would include the events forming the basis of the dismissed counts as racketeering acts in Count 1. Defendant objected to that ruling on the record. On July 16, 2014, the jury concluded its deliberations. It found Defendant guilty on all remaining counts. On the special verdict form, it also indicated that all racketeering acts were proven except Racketeering Act Four (attempted murder of Edwin Powers), and it did not find that the drug conspiracy charged in Count 2 involved marijuana, although the jury found that the conspiracy did involve cocaine and 28 grams or more of crack cocaine.

On August 11, 2014, Defendant submitted the instant motion. ECF No. 186. On August 22, 2014, the Government filed its opposition. ECF No. 190. The motion is accordingly fully briefed and ripe for disposition.

## II. LEGAL STANDARDS

Rule 29 of the Federal Rules of Criminal Procedure ("Rule 29") provides in relevant part that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal" where the defendant has successfully challenged the sufficiency of the evidence used to convict him. FED. R. CRIM. P. 29(c)(2). "A defendant challenging the sufficiency of the

3

evidence to support his conviction carries a heavy burden." *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (citation omitted). In reviewing a Rule 29 challenge to a conviction, a court inquires whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Johnson*, 55 F.3d 976, 979 (4th Cir. 1995) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Deference to the trier of fact requires that the court "construe the evidence in the light most favorable to the Government, assuming its credibility, drawing all favorable inferences from it, and taking into account all the evidence, however adduced." *Johnson*, 55 F.3d at 979.

In its sufficiency review, a court considers both circumstantial and direct evidence. *United States v. Martin*, 523 F.3d 281, 289 (4th Cir. 2008); *United States v. Jackson*, 863 F.2d 1168, 1173 (4th Cir. 1989) (noting "circumstantial evidence is treated no differently than direct evidence, and may be sufficient to support a guilty verdict even though it does not exclude every reasonable hypothesis consistent with innocence"). However, assessing the credibility of witnesses is within the sole province of the jury. *See Johnson*, 55 F.3d at 979; *United States v. Uzenski*, 434 F.3d 690, 700 (4th Cir. 2006). The uncorroborated testimony of a single witness may be sufficient to sustain a guilty verdict; even if that witness is an accomplice, co-defendant, or informant. *See United States v. Wilson*, 115 F.3d 1185, 1189-90 (4th Cir. 1997); *United States v. Manbeck*, 744 F.2d 360, 392 (4th Cir. 1984); *United States v. Arrington*, 719 F.2d 701, 705 (4th Cir. 1983).

Federal Rule of Criminal Procedure 33 ("Rule 33") provides, in part, that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a); *Arrington*, 757 F.2d at 1485 (citations omitted) ("When the evidence weighs so heavily against the verdict that it would be unjust to enter judgment, the court should grant a new trial").

In deciding a motion for a new trial, a court is not constrained by the requirement that it view the evidence in the light most favorable to the government and thus, may evaluate the credibility of the witnesses. However, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") instructs that a reviewing court "should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when the evidence 'weighs heavily' against it." *United States v. Smith*, 451 F.3d 209, 216-17 (4th Cir. 2006) (citation omitted).

Defendant has also raised various claims of prosecutorial misconduct. "When asserting a prosecutorial misconduct claim, a defendant bears the burden of showing (1) that the prosecutors engaged in improper conduct, and (2) that such conduct prejudiced the defendant's substantial rights so as to deny the defendant a fair trial." *United States v. Alerre*, 430 F.3d 681, 689 (4th Cir. 2005). One of Defendant's claims is that the Government knowingly used perjured testimony. To succeed on this claim, he must show that (1) the testimony was perjured and (2) the Government knew the testimony was false, and (3) "there is a reasonable probability that the false testimony could have affected the verdict." *United States v. Roane*, 378 F.3d 382, 400 (4th Cir. 2004). "Mere inconsistencies in the testimony by the government witnesses do not establish the government's knowing use of false testimony." *United States v. Griley*, 814 F.2d 967, 970–71 (4th Cir.1987). Defendant also alleges various violations of the Government's discovery obligations. To prove a *Brady* or *Giglio* violation, the burden is on Defendant to "show that the undisclosed evidence was (1) favorable to him either because it is exculpatory, or because it is impeaching; (2) material to the defense, *i.e.,* 'prejudice must have ensued'; and (3) that the prosecution had materials and failed to disclose them." *United States v. Wilson*, 624 F.3d 640, 661 (4th Cir. 2010).

## III. DISCUSSION

### A. Count One (Racketeering)

#### 1. Evidence relating to dismissed counts

Defendant first raises multiple and overlapping arguments regarding Racketeering Acts Two through Four, which alleged two murders and an attempted murder on May 17, 2009. As discussed above, the Court dismissed the counts of the indictment pertaining to these events (Counts Three through Eight) at the close of the Government's evidence because it concluded that the evidence was insufficient as to one element of the murder in aid of racketeering statute, 18 U.S.C. § 1959(a). However, it ruled that the murders and attempted murder could nonetheless remain as predicate racketeering acts.

Defendant states that it was error to "allow the Government to argue the facts" of these events in relation to both Count One and the felon-in-possession charge in Count Nine. Defendant provides no support for the proposition that the Government is not permitted to provide or argue evidence that is relevant to and supports predicate racketeering acts and counts of the indictment as to which the jury is asked to render a verdict. The Government's evidence was not admissible because it was *res gestae* with the other murders, as Defendant appears to assume, but because it was directly relevant to prove the predicate acts and Count 9.

To the extent Defendant's argument is that there was insufficient evidence to support the inclusion of the predicate acts at all, Defendant fails to make the requisite showing under either Rule 29 or the less demanding Rule 33. Critically, the Government was *not* required to prove that Defendant intended to maintain or increase his position in the enterprise to show that the murders and attempted murder were predicate racketeering acts. The Court concludes that the evidence was sufficient to support the jury's verdict as to what the Government *was* required to

prove: that these acts formed part of a pattern of racketeering activity. Although the evidence presented at trial was that Defendant's personal and immediate motivation for the murders was not to strengthen his position within Thug Relations, there was evidence that the May 17, 2009 events were part of a pattern of Thug Relations' activities and sufficiently connected to the enterprise. *E.g.*, *United States v. Marino*, 277 F.3d 11, 27-28 (1st Cir. 2002) (predicate acts may form a pattern if "defendant uses his position in the enterprise to commit the racketeering acts" or "when the resources, property, or facilities of the enterprise are used by the defendant to commit the predicate acts, and need not "have benefitted the enterprise in any way").

Defendant also contends that the Court should have given a limiting instruction pursuant to Federal Rule of Evidence 404(b) because they were other bad acts used to show Defendant's propensity for violence. But as the Court has just stated, the evidence and argument regarding the May 17, 2009 events were not admissible to show "motive" or "opportunity" to commit the later murders. Instead, the evidence was directly relevant to the predicate Racketeering Acts 2-4 and to Count 9, and the Government was therefore entitled to present evidence supporting those charges.

Moreover, even if the evidence were insufficient to support the inclusion of the May 17, 2009 events as racketeering acts, the error is harmless because Racketeering Acts One, Five, and Six were sufficient to show a pattern of racketeering activity, because the evidence regarding the May 17, 2009 events was still relevant to Count 9, and because there is little risk that the evidence unduly influenced the jury's verdict as to the other counts given the voluminous evidence supporting those charges.

Finally, Defendant claims a constitutional violation on double jeopardy grounds. As described above, after dismissing Counts Three through Eight at the close of the Government's

case, the Court directed the parties to submit any relevant case law or precedent regarding whether Racketeering Acts Two through Four should also be excluded and deferred its decision. Before the Court ruled definitively, and before the parties finished submitting relevant precedent, the defense rested its case. Defendant now claims that "the Court's ruling and timing of its ruling caused the defense to forego certain witnesses, to put on an abbreviated case, and to reconstruct its closing arguments entirely." ECF No. 186, at 9. Because the Court's initial ruling as to the predicate acts was far from unqualified, there is no double jeopardy violation. *See Smith v. Massachusetts*, 543 U.S. 462, 473 (2005). Moreover, because Defendant has failed to explain which additional witnesses he would have called or what evidence he would have presented, he has not shown prejudice or undermined the jury's verdict.

### 2. Count One generally

Defendant next argues that the evidence was insufficient to prove that Thug Relations was a criminal enterprise, defined in relevant part as "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Under either Rule 29 or Rule 33, this claim fails. Defendant contrasts Thug Relations with organizations that have elected or clearly designated officers, regular meetings, colors, and dues and contends that because Thug Relations lacked these features, it cannot be considered an "enterprise" within the meaning of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). But the Supreme Court rejected a similar argument in *Boyle v. United States*, 556 U.S. 938, 948 (2009), where the defendant argued that an enterprise must have "structural attributes" such as hierarchy, dues, a chain of command, and regular meetings. *Boyle* explicitly disagreed with this argument, pointing to the "breadth of the 'enterprise' concept," and held that the statutory requirement was satisfied where the Government proved that there was "an ongoing organization with some sort

of framework, formal or informal, for carrying out its objectives" and that "the various members and associates of the association function[ed] as a continuing unit to achieve a common purpose." 556 U.S. at 949-51. The Government presented ample evidence in this regard, and therefore Defendant's argument is meritless.

## B. Prosecutorial misconduct

### 1. Testimony of Jayson Bryant

Defendant's first claim of prosecutorial misconduct relates to the May 17, 2009 murders, and specifically, the testimony of Jayson Bryant. Bryant's testimony and that of other witnesses identified Bryant as being in the car with Defendant on the night of the murders, leaving the car with Defendant, and discharging his firearm (although without striking anyone) along with Defendant. Bryant testified at trial that his own gun was a black Glock. ECF No. 186, at 14; ECF No. 190, at 21. Numerous other witnesses testified at trial to the same thing. *Id.* However, a FBI 302 memorializing an agent's prior conversation with Bryant indicated that Bryant previously told the agent that his gun was two-toned, that is, chrome on the top and black on the bottom. *Id.* Defendant contends that this amounts to "fraud on the court" and that the conviction improperly resulted from the prosecution's knowing use of perjured testimony. However, Defendant has not shown that the testimony was perjured. Other witnesses corroborated Bryant's testimony, including that of a forensic expert, so at most, Defendant has only show an inconsistency between a prior agent interview and a witness's testimony at trial. This does not amount to the knowing use of perjured testimony. Moreover, Defendant was able to highlight this inconsistency with Bryant's past testimony, thereby preventing any prejudice.

### 2. *Giglio* & *Jencks* violations

Defendant next alleges that a Government witness shared in the proceeds of a murder (allegedly committed by another Thug Relations murder) and that the Government failed to provide *Giglio* material to this effect to the defense. However, Defendant has failed to show that the prosecution had this information but failed to disclose it. Defendant does not allege the source of this information or the reason it believes the information was in the Government's possession. And the Government avers that neither the prosecution nor the agents (through affidavit) had any knowledge that the witness received any proceeds. Because Defendant has not satisfied its burden to show a discovery violation, this claim also fails.

Defendant also raises the matter of missing pages from the grand jury transcripts the Government provided to him as part of its *Jencks* obligations. The Court extensively addressed this issue throughout the trial and made accommodations to prevent any prejudice, such as requiring the Government to delay certain witnesses and giving the defense additional time to prepare. The Court declines to re-address this matter.

### 3. Testimony of Calvin Bailey

Calvin Bailey testified that he was in the car with Defendant on the night of the November 4, 2009 murders. Defendant claims that his trial testimony was "essentially perjured," stating that it was 1) contrary to prior statements he had made to agents and before the grand jury, 2) contained new details, and 3) was contrary to the trial testimony of another person in the car that night, and that the Government improperly allowed this false and misleading trial testimony and "buttressed" it. Regarding the first allegation, the difference between the two statements is so minor that Defendant has not established it is prejudicial. The issue is whether on the night of the murders, Defendant *said* he was going to a certain individual's house, or

whether Bailey only *thought* that Defendant was going to that house. The central import of both statements is substantively the same and the discrepancy is so minor that Defendant cannot establish prejudice.

Second, Defendant highlights that Bailey testified at trial to two new details that he had not disclosed before: that he saw a car with a female in it in the parking lot of the building where the murders occurred and that Defendant shot at the car. But Defendant has not shown that Bailey's trial testimony with this new information was perjured. According to the excerpts of Bailey's prior grand jury testimony, this matter simply did not come up at all. Although Bailey did state in that prior testimony that he didn't see Defendant shoot anyone, ECF No. 186, in context this clearly meant that he did not see Defendant commit the murders.

Finally, that Bailey's trial testimony had some inconsistencies with the testimony of another Government witness, the driver of the car, does not show that there was any perjured testimony. Moreover, these inconsistencies undermine Defendant's allegations that the Government improperly "coached" its witnesses.

### 4. Witness "coaching"

Defendant's final claim of Government misconduct is that during the trial, defense counsel heard from other inmates that agents were meeting with in-custody witnesses, "coach[ing] them on what to say," and "making promises of a 75% time cut in their sentences." ECF No. 186, at 25. Without more specific allegations, the Court concludes that Defendant has failed to show prejudice. First, Defendant did call as a witness an inmate from lock-up who testified as to this matter. Second, Defendant repeatedly and vigorously raised with the Government's in-custody witnesses their hope that they would receive significant time cuts as a

result of their cooperation. Third, the Government acknowledges that it met with its witnesses to prepare but (through an affidavit) that it repeatedly admonished them to tell the truth.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion For Judgment of Acquittal is **DENIED** and alternatively, the Motion for a new Trial is also **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to counsel for the Defendant and the United States Attorney's Office.

**IT IS SO ORDERED.**

Norfolk, Virginia
September __, 2014

Raymond A. Jackson
United States District Judge