
FILED

JUL 1 1 2018

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Newport News Division

ANTONIO JERROD FULLER,

Petitioner,

v.     **CRIMINAL ACTION NO. 4:13cr72**

UNITED STATES OF AMERICA,

Respondent.

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Antonio Jerrod Fuller's ("Petitioner") *pro se* Motion to Vacate, Set

Aside, or Correct his Sentence, pursuant to Title 28, United States Code, Section 2255 ("§ 2255

Motion"). ECF No. 284. The Government filed a Response in Opposition to this Motion, ECF

No. 293, and Petitioner filed a Reply to the Response. ECF No. 296. Having thoroughly

reviewed the motions, filings, and records in this case, the Court finds that no hearing is

necessary to address Petitioner's Motion. For the reasons set forth below, Petitioner's § 2255

Motion is **DENIED.**

### I. FACTUAL AND PROCEDURAL HISTORY

On November 12, 2013, a Grand Jury in Eastern District of Virginia returned a nineteen

count Superseding Indictment against Petitioner. ECF No. 34. Count One charged Petitioner

with Racketeering Conspiracy, in violation of 18 U.S.C. § 1962(d). *Id.* Count Two charged

Petitioner with Drug Conspiracy, in violation of 21 U.S.C. § 846. *Id.* Counts Three, Five, and

Eleven charged Petitioner with Murder in Aid of Racketeering Activity, in violation of 18 U.S.C.

§ 1959(a)(1). *Id.* Counts Four, Six, and Twelve charged Petitioner with Use of Firearm

1

Resulting in Death, in violation of 18 U.S.C. §§ 924(c)(1), (j), and 2. *Id.* Counts Seven and Thirteen charged Petitioner with Attempted Murder in Aid of Racketeering Activity, in violation of 18 U.S.C. §§ 1959(a)(5) and 2. *Id.* Counts Eight and Fourteen charged Petitioner with Use, Carry, Brandish, and Discharge Firearm in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1). *Id.* Counts Nine and Fifteen charged Petitioner with Felon in Possession of Firearm, in violation of 18 U.S.C. § 922(g)(1). *Id.* Petitioner pled not guilty to all of the aforementioned Counts of the Indictment on December 19, 2013. ECF No. 45. On July 16, 2014, Petitioner was convicted on Counts One, Two, Nine, and Eleven through Fifteen. Petitioner was acquitted on all other Counts. ECF No. 173.

On March 18, 2015, Petitioner was sentenced to life on Counts One and Eleven, to be served concurrently, with five years of supervised release, to run concurrently. ECF No. 234. On Count Two, Petitioner was sentenced to 480 months, to be served concurrently with Count One, and five years of supervised release, to run concurrently with Count One. *Id.* On Counts Nine, Thirteen, and Fifteen, Petitioner was sentenced to 120 months, to be served concurrently with Count One, and three years of supervised release, to run concurrently with Count One. *Id.* On Count Twelve, Petitioner was sentenced to 120 months, to be served consecutively to Count One, and five years of supervised release, to run concurrently with Count One. *Id.* On Count Fourteen, Petitioner was sentenced to 120 months, to be served consecutively to Count Twelve, and five years of supervised release, to run concurrently with Count One. *Id.*

Petitioner filed a Notice of Appeal on March 27, 2015, challenging this Court's denial of his motions for continuance during trial and claiming that his trial attorneys ("Counsel") were constitutionally ineffective. EFC No. 240. On November 9, 2016, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") entered a Final Judgment affirming this Court's

decision to deny the motions for continuance and stating that the record did not conclusively demonstrate that Counsel were constitutionally ineffective. ECF No. 280.

Petitioner filed the instant Motion on November 13, 2017. ECF No. 284. The Court ordered the United States Attorney to respond to Petitioner's § 2255 Petition. ECF No. 286. The Government filed a Response in Opposition to Petitioner's Motion on March 7, 2018, ECF No. 293, and Petitioner filed a Reply on April 16, 2018. ECF No. 296.

## II. STANDARD OF REVIEW AND BURDEN OF PROOF

### A. Section 2255 Generally

A petitioner may move the court to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255, in four instances: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the district court lacked jurisdiction to impose the sentence; (3) the length of the sentence is in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255 (1948). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Jones v. United States*, No. 4:09CV76, 2010 WL 451320, at *4 (E.D. Va. Feb. 8, 2010) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)).

When a petitioner in federal custody wishes to collaterally attack his sentence or conviction, the appropriate motion is a § 2255 motion. *United States v. Winestock*, 340 F.3d 200, 203 (4th Cir. 2003). Section 2255 of Title 28 of the United States Code governs post-conviction relief for federal prisoners. It provides in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

In a proceeding to vacate a judgment of conviction, the petitioner bears the burden of proving his or her claim by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). Additionally, *pro se* filers are entitled to more liberal construction of their pleadings. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), *cert. denied*, 439 U.S. 970 (1978) (providing that a *pro se* petitioner is entitled to have his petition construed liberally and is held to less stringent standards than an attorney drafting such a complaint). Furthermore, if the motion is brought before the judge that presided over the conviction, the judge may rely upon recollections of previous events. *Blackledge v. Allison*, 431 U.S. 63, 74 n. 4 (1977); *Carvell v. United States*, 173 F.2d 348, 348-49 (4th Cir. 1949) (stating it is highly desirable that § 2255 motions "be passed on by the judge who is familiar with the facts and circumstances surrounding the trial, and is consequently not likely to be misled by false allegations as to what occurred.").

**B. Section 2255 Hearing Requirement**

When deciding a § 2255 motion, a court must promptly grant a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Motions under § 2255 "will not be allowed to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178 (1947). For this reason, issues already fully litigated on direct appeal may not be raised again "under the guise of a collateral attack." *Boeckenhaupt*

4

*v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976). Issues already decided on direct appeal may only be raised in a § 2255 motion if there has been a "material change" in the law "between the direct appeal and the § 2255 motion." *United States v. Masters*, No. 91-6100, 1992 WL 232466, at *2 (4th Cir. 1992); *see also United States v. Roane*, 378 F.3d 382, 396, n. 7 (4th Cir. 2004). Further, issues that might have been, but were not, raised on direct appeal may not be raised subsequently in a § 2255 motion. *Sanders v. United States*, 230 F.2d 127 (4th Cir. 1956), *cert. denied*, 351 U.S. 955 (1956).

Claims of prosecutorial misconduct should generally be raised on direct appeal. *Reese v. United States*, No. 1:15CR32, 2017 WL 2623770, at *4 (E.D. Va. June 16, 2017). These claims are procedurally defaulted if they could have been, but were not, raised on direct appeal. *Hernandez Portillo v. United States*, No. 1:07CR81, 2014 WL 3615815, at *16 (E.D. Va. Jul. 17, 2014). However, prosecutorial misconduct claims alleging *Brady* violations are properly raised in a § 2255 motion. *Id.* Likewise, ineffective assistance of counsel claims should generally be raised in a collateral motion instead of on direct appeal. *United States v. Richardson*, 195 F.3d 192, 198 (4th Cir. 1999).

## C. Prosecutorial Misconduct

Claims of prosecutorial misconduct are procedurally defaulted if they could have been, but were not, raised on direct appeal. *Hernandez Portillo*, No. 1:07CR81 at *44. Prosecutorial misconduct claims that were not raised on direct appeal may only be raised in a § 2255 motion if a petitioner can demonstrate actual innocence by clear and convincing evidence or satisfy a two-pronged test. *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1992). The test requires a petitioner to show (1) "cause for procedural default" excusing failure to raise the claim on direct appeal, and (2) "actual prejudice resulting from the errors of which he complains." *Id.*

5

The cause of prong one "must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *Id.* at 493. To show prejudice as required by prong two, a petitioner must do more than suggest "a *possibility* of prejudice"; he must show that the alleged errors "worked to his *actual* and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982). *See also Broyles v. United States*, No. 2:09CR3, 2013 WL 6885128, at *2 (E.D. Va. Dec. 30, 2013) (quoting *Frady* to define "prejudice" in the *Mikalajunas* inquiry). A petitioner must establish both prongs to raise prosecutorial misconduct in a § 2255 motion if that claim was not raised on direct appeal. *Mikalajunas*, 186 F.3d at 493.

However, claims of prosecutorial misconduct alleging *Brady* violations are properly raised in a § 2255 motion. *Hernandez Portillo*, No. 1:07CR81 at *44. Under *Brady v. Maryland*, prosecutors have an affirmative duty to disclose evidence that is both favorable to the defendant and "material either to guilt or punishment." 373 U.S. 83, 87 (1963). Suppressing such evidence is a violation of the defendant's Fifth Amendment right to Due Process, "irrespective of the good or bad faith of the prosecution." *Id.* Evidence is "material" under *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). In other words, evidence is material "if it might have affected the outcome of the trial." *United States v. Agurs*, 427 U.S. 97, 104 (1976). Material evidence that falls under *Brady* includes both exculpatory evidence and impeachment evidence, which is often called "*Giglio* material." *Bagley*, 473 U.S. at 676 (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)). The prosecution has an obligation to disclose *Brady* and *Giglio* material whether or not the defense requests it. *Agurs*, 427 U.S. at 108.

6

To prove a *Brady* or *Giglio* violation, a defendant must "show that the undisclosed evidence was (1) favorable to him either because it is exculpatory, or because it is impeaching; (2) material to the defense, *i.e.*, 'prejudice must have ensued'; and (3) that the prosecution had materials and failed to disclose them." *United States v. Wilson*, 624 F.3d 640, 661 (4th Cir. 2010). There is no *Brady* violation where the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked. *United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990).

Material that must be disclosed pursuant to the Jencks Act may overlap with *Brady* and *Giglio* material. The Jencks Act provides that statements made by government witnesses may be withheld until after the witnesses have testified on direct examination. *United States v. Beckford*, 962 F. Supp. 780, 789 (E.D. Va. 1997). The Act provides that after direct examination, the government must produce "any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified" if the defendant so moves. 18 U.S.C. § 3500(b) (1970). This is intended to allow the defense to obtain statements for impeachment purposes. *Id.* Jencks material that constitutes exculpatory or impeachment evidence overlaps with *Brady* material. *Beckford*, 962 F. Supp. at 789. The Eastern District of Virginia has adopted a "balancing approach" to determine on a case-by-case basis whether this information must be disclosed by the earlier *Brady* deadline or may be withheld until after direct examination, as allowed by the Jencks Act. *Id.* at 792. To determine the proper time for disclosure, courts in the Eastern District of Virginia must weigh the danger of early disclosures against the disadvantage to the defendant of later disclosures; in other words, "the due process requirements of *Brady* must be met early enough to allow the defense to make effective use of the exculpatory statements at trial, while at the same time the dangers that the

Jencks Act seeks to control must be minimized." *Id.* (quoting *United States v. Shifflett*, 798 F. Supp. 354, 356-57 (W.D. Va. 1992)).

## D. Ineffective Assistance of Counsel

As a general matter, a petitioner must satisfy two factors to establish ineffective assistance of counsel: "(1) that [counsel]'s performance fell below an objective standard of reasonableness, and (2) that [petitioner] was prejudiced by the deficiency because it created a reasonable probability that but for counsel's errors, the result of the proceeding would have been different." *United States v. Hoyle*, 33 F.3d 415, 418 (4th Cir. 1994) (citing *Smith v. Smith*, 931 F.2d 242, 244 (4th Cir. 1991)); *see also Strickland v. Washington*, 466 U.S. 668, 693 (1984). "A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Hoyle*, 33 F.3d at 418.

Whether before, during, or after trial, when the Sixth Amendment applies, the formulation of the standard is the same: reasonable competence in representing the accused. *Strickland*, 466 U.S. at 688-89. In applying and defining this standard, substantial deference must be accorded to counsel's judgment. *Id.* at 689. If petitioner makes an insufficient showing on one prong, there is no reason for a court deciding an ineffective assistance claim to address both components of the inquiry. *Id.* at 697. A court is not required to begin with an analysis of the first prong of *Strickland* because "a court need not approach the inquiry in the same order," and "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.*

To demonstrate deficient representation, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A petitioner must overcome a strong presumption that counsel's performance falls within the wide range of

8

reasonable professional assistance under the circumstances. *Id.* at 689. Also, a petitioner bears the burden of proving prejudice. *Fields v. Att'y Gen. of the State of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992). To show prejudice, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

## III. DISCUSSION

Petitioner bases his § 2255 Motion on two grounds: prosecutorial misconduct and ineffective assistance of counsel. Petitioner makes several claims on each ground. The Court will address each claim in turn.

### A. Prosecutorial Misconduct

The first ground of Petitioner's Motion is prosecutorial misconduct. Petitioner's first claim is that the Government violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and the Jencks Act, 18 U.S.C. § 3500 (1970), by (1) making late pre-trial disclosures of Jencks and *Giglio* material; (2) making post-trial disclosures of Jencks and *Giglio* material; (3) failing to disclose the Grand Jury testimony of Calvin Bailey; (4) coaching witnesses; and (5) failing to disclose other exculpatory evidence.

In its Response, the Government alleges that Petitioner makes two additional claims: (1) that the Government failed to disclose Aaron Sumler's dying declaration to Kenneth Matthews and (2) that this Court abused its discretion by denying the defense counsel's motions for continuance. ECF No. 293 at 36-37. However, Petitioner raised these claims on appeal and does not renew them in the instant Motion. Br. of Appellant at 9, 19.

**1. Prosecutorial Misconduct for Late Disclosure of Jencks and *Giglio* Materials Before and During Trial**

Petitioner's first claim is that the Government violated *Brady* by disclosing certain Jencks and *Giglio* material after the agreed-upon discovery deadline of June 26, 2014. Petitioner lists material disclosed before and during trial, then proceeds to focus his arguments on three pieces of material disclosed during trial: twelve pages of 302s on Kevin Ashby,[1] disclosed on the first day of trial (July 1, 2014); one page from Whitney Johnson's 302; and material on Aronte Jarvis, disclosed on July 11, 2014. ECF No. 284-1 at 2, 15, 35. Petitioner claims that this material is favorable to him, that the Government's failure to disclose it before trial impaired his defense, and that he was thus "deprived . . . of a fair trial." *Id.* at 1, 14-15. In support of this claim, Petitioner mentions that the missing Ashby 302s were disclosed "the same day Ashby was set to testify." *Id.* at 3. Petitioner also argues that the late disclosure of a page of Johnson's 302 violated *Brady* because it prevented Counsel from making effective use of it; he asserts that Counsel were unable to follow along with Johnson's direct examination and effectively cross-examine her. *Id.* at 35. Lastly, Petitioner contends that the Government violated *Brady* by failing to disclose 125 pages of Jencks material on Aronte Jarvis until "moments before Jarvis took the stand." *Id.* at 15. Petitioner claims that these are *Brady* violations that resulted in prejudice and a "miscarriage of justice." *Id.* at 28.

The Government argues that it did not violate *Brady* because Counsel had enough time to make effective use of the materials, and further, that it was entitled to withhold this information until after the June 26 deadline pursuant to the Jencks Act. First, the Government notes that Ashby's direct examination did not begin until July 2 and his cross-examination began July 7 after a long weekend. ECF No. 293 at 36. The Government argues that this gave Counsel

---

[1] A "302" refers to an FD-302 form, a form used by the Federal Bureau of Investigation to report interviews that agents conduct.

sufficient time to read the material and prepare for cross-examination. *Id.* Second, the Government argues that Petitioner was not prejudiced by the missing page of Johnson's 302 because, "out of an abundance of caution," the Government did not question Johnson on the contents of that page. *Id.* (citing Tr. at 309). The Government further points out that the "defendant . . . later himself elicited the evidence from Ashby." *Id.* Third, the Government notes that it called Aronte Jarvis later than it had planned to in order to give Counsel sufficient time for preparation. *Id.* at 37. The Government contends that it was justified in withholding the Jencks material until later because of the risks of witness tampering and witness security. *Id.* at 34. In sum, the Government concludes that Petitioner was not prejudiced because notwithstanding these withheld materials, Petitioner had "ample resources to conduct his defense." *Id.* at 37.

To prove a *Brady* or *Giglio* violation, a petitioner must show that undisclosed evidence was (1) favorable to him because it is exculpatory or impeaching; (2) material to the defense, that is, the petitioner was prejudiced by not having it; and (3) in the possession of the prosecution but not disclosed. *Wilson*, 624 F.3d at 661. There is no *Brady* violation where the exculpatory evidence is available in a source where a reasonable defendant would have looked. *Wilson*, 901 F.2d at 381. Jencks material overlaps with *Brady* and *Giglio* material when it is exculpatory or impeaching. *Beckford*, 962 F. Supp. at 789. This Court applies a balancing test to determine whether overlapping material must be disclosed by the earlier *Brady* deadline or may be withheld until after direct examination, as allowed by the Jencks Act. *Id.* at 792. "[T]he due process requirements of *Brady* must be met early enough to allow the defense to make effective use of the exculpatory statements at trial, while at the same time the dangers that the Jencks Act seeks to control must be minimized." *Id.* (quoting *Shifflett*, 798 F. Supp. at 356-57).

11

Petitioner renews claims that were previously raised in his Amended Motion to Dismiss. ECF No. 215 at 3-4, 8, 12. Finding no new evidence or arguments in the instant motion, the Court finds that Petitioner fails to establish the elements of a *Brady* claim for the same reasons that he failed to do so previously. Petitioner fails to establish the first element because he does not show that the materials are either exculpatory or impeaching. *Wilson*, 624 F.3d at 661. Petitioner fails to establish the second element because he fails to show that he was prejudiced by pre-trial disclosures that occurred after June 26. *Id.* He also fails to show that he was prejudiced by the missing pages that were disclosed during trial, in light of the accommodations made by the Government and the Court. *See* ECF No. 191 at 10. The Fourth Circuit affirmed this Court's denial of Petitioner's motions for continuance, agreeing with this Court that his Counsel had sufficient time to make use of the disclosed materials. ECF No. 279 at 11-12. As the Fourth Circuit stated in its opinion, "we simply cannot conclude that Fuller was denied the opportunity to explore fully before the jury the issues material to his defense." *Id.* at 10. Lastly, with regard to the materials disclosed during trial, Petitioner does not present an argument for why the *Brady* rule should govern instead of the Jencks Act. Applying the balancing test, this Court finds that under the Jencks Act, the Government was justified in delaying the disclosure of these materials to avoid genuine risks of witness tampering and personal danger to witnesses.

Thus, Petitioner does not have a *Brady* claim of prosecutorial misconduct for the late disclosure of materials before and during trial.

**2. Prosecutorial Misconduct for Post-Trial Disclosure of Jencks and *Giglio* Materials**

Petitioner's second claim is that the Government violated *Brady* by disclosing Jencks and *Giglio* material after the trial. This material includes hearsay speculation about who might have killed Christian Hatch, contained in a letter written by Detective Nunez; hearsay statements made

12

by Romain Buie, a confidential informant; and hearsay statements made by Rashad Harriot to a confidential informant, who then relayed the statements to a law enforcement officer. *See* ECF No. 273 at 31. Petitioner focuses on the statements by Buie and Harriot. On September 24, 2014, after trial had concluded and the verdict had been issued, the United States Department of Justice emailed Counsel to report that additional material relevant to the defense had been identified. ECF No. 284-1 at 5. The material included direct hearsay statements made by confidential informant Romain Buie to an ATF task force officer, in which Buie says that Kevin Ashby told him that Ashby "killed two guys in the Marshal Courts Apartments." *Id.* at 8. "Two guys" refers to Andre Horton and Julius Johnson, who Petitioner was convicted of murdering. *Id.* at 3. Petitioner contends that failure to disclose this hearsay prior to trial violated *Brady* and tries to establish the elements of a *Brady* claim. *Id.* at 4. First, Petitioner argues that the Buie hearsay is exculpatory because it would "help exonerate the Defendant, [or] at worst, establish doubt," and that it is impeaching because it contradicts Ashby's testimony. *Id.* at 3-4, 10. This goes to the first element of a *Brady* claim. Second, Petitioner claims that if Counsel had known about this hearsay, they would have subpoenaed Buie; essentially Petitioner claims that the hearsay was material to the defense, the second element of a *Brady* claim. *Id.* at 4. Third, Petitioner notes that the Government possessed this material and failed to disclose it. The Department of Justice email states that the material was possessed by the Government and "inadvertently . . . not identified . . . for pre-trial review and possible disclosure . . . ." *Id.* at 5.

Petitioner also argues that the Government violated *Brady* by failing to disclose the hearsay by Rashad Harriot, who allegedly said that Aronte Jarvis told him that Jarvis killed Christian Hatch. ECF No. 284-1 at 15, 17. Petitioner again tries to establish the elements of a *Brady* claim. First, he asserts that this hearsay is exculpatory because it "at worst establishe[s]

doubt" that Petitioner killed Hatch, and that it is impeaching because it could have been used against "key witnesses." *Id.* at 14-15. Second, Petitioner claims that failure to disclose this evidence prejudiced him by giving the trial jury a false impression of Jarvis and leading the jurors to believe his testimony. *Id.* at 15. This seeks to establish materiality. Third, Petitioner asserts that the Government intentionally withheld the hearsay, which prejudiced him and caused a "miscarriage of justice." *Id.* at 15, 28. Fourth, Petitioner seems to allege that the testimony that the Government presented at trial was perjured because it was in conflict with Buie's hearsay. *Id.* at 4. This alleged "species" of *Brady* occurs when "undisclosed evidence demonstrates that the prosecutor's case included perjured testimony and that the prosecution knew, or should have know[n], of the perjury." *Agurs*, 427 U.S. at 103.

The Government concedes that it possessed the materials and failed to disclose them, but argues that they are not *Brady* materials because Petitioner fails to show prejudice. ECF No. 293 at 46. First, the Government notes that although Petitioner possessed the post-trial disclosures from September 24, 2014 to February 9, 2015, he "failed to show how the disclosures affected the trial," thus failing to establish the second element of a *Brady* claim. *Id.* at 47. Second, with regard to the Buie hearsay, the Government argues that Petitioner already possessed this information in a different form and that using it to impeach Ashby would have been cumulative. *Id.* at 38. The Government refers to the argument it made on direct appeal that hearsay is inadmissible and immaterial. Br. of Appellee at 58-59. The Government does not address the Harriot hearsay in its Response to the instant Motion, but it did address this material on direct appeal. There, the Government argued that the material was inadmissible hearsay. *Id.* at 59.

As previously mentioned, a petitioner must satisfy three criteria to establish a *Brady* violation: he must show that undisclosed evidence was (1) favorable because exculpatory or

impeaching; (2) material, *i.e.* lack of it was prejudicial; and (3) in the possession of the government and undisclosed. *Wilson*, 624 F.3d at 661. There is no *Brady* violation where undisclosed exculpatory information also lies in a source that is available to the defendant where a reasonable defendant would have looked. *Wilson*, 901 F.2d at 381.

The Court concludes that Petitioner fails to show a *Brady* violation because he fails to establish that the Buie and Harriot hearsay is exculpatory, material, or admissible. These issues were previously raised in Petitioner's Amended Motion to Dismiss and considered at the hearing on that Motion. ECF Nos. 215 at 6, 8-9, 12-13; 273 at 7-10, 15-18, 22-23, 27-32. In the Court's written Order to Deny Defendant's Motion to Dismiss, the Court determined that Petitioner was not prejudiced by the post-trial disclosures concerning the Hatch murder. ECF No. 236 at 6-7. The Court found that Petitioner failed to establish a *Brady* violation because he failed to show that the disclosures contained any evidence that was "exculpatory, impeaching, admissible, or material." *Id.* at 6. Petitioner presents no new evidence or arguments in the instant Motion, so for these same reasons, the Court finds that Petitioner fails to establish a *Brady* claim.

Petitioner also raised these claims on direct appeal. Br. of Appellant at 33-38. Affirming this Court's denial of motions for continuance, the Fourth Circuit held that Petitioner "provides no legal argument as to how the post-trial disclosures might have been exculpatory in light of what appears to be overwhelming evidence supporting his conviction; whether the disclosure materials were admissible; and whether there was a reasonable probability that the late disclosures would have changed the result of the proceeding had they been disclosed in a timely fashion." ECF No. 279 at 14-15. Petitioner presents no new arguments in the instant Motion, so the Court finds that Petitioner fails to show that the post-trial disclosures are *Brady* violations.

Lastly, the Court also concludes that Petitioner fails to present any evidence that the Government knowingly used perjured testimony. It is well established in the Fourth Circuit that "[m]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987). Because inconsistencies in testimony are the only evidence that supports Petitioner's allegation of perjury, Petitioner fails to meet the burden of proof for showing perjured testimony.

Thus, Petitioner does not have a *Brady* claim of prosecutorial misconduct based on post-trial disclosures concerning the Hatch murder.

### 3. Prosecutorial Misconduct for Failing to Disclose Calvin Bailey's Grand Jury Testimony

Petitioner's third claim is that the Government violated *Brady* and committed prosecutorial misconduct by failing to disclose a verbatim report of Calvin Bailey's Grand Jury testimony, which differs from his testimony at trial. ECF No. 284-1 at 22-23. First, Petitioner argues that the undisclosed testimony is favorable because it could have been used to impeach Bailey at trial. *Id.* at 23. Petitioner notes inconsistencies between the testimony that Bailey gave before the Grand Jury and the testimony he gave at trial, attempting to show that the Grand Jury testimony could have been used to discredit the trial testimony. *Id.* at 21-22. Second, Petitioner claims that the failure to disclose resulted in "prejudice" without explaining why. *Id.* at 28. Third, Petitioner argues that the testimony was suppressed because it was in the Government's possession, undisclosed, and not otherwise available to Defense. *Id.* at 23.

The Government does not directly address this claim, but replies to it by way of Petitioner's claim of ineffective assistance of counsel. The Government argues that "defendant fails to identify any specific impeachment that would have made a difference" to the outcome of the trial, thus failing to establish prejudice. ECF No. 293 at 40.

As mentioned above, a petitioner must satisfy three criteria to establish a *Brady* violation: he must show that undisclosed evidence was (1) favorable because exculpatory or impeaching; (2) material; and (3) in the possession of the government. *Wilson*, 624 F.3d at 661. There is no *Brady* violation when undisclosed exculpatory information also lies in a source that is available to the defendant where a reasonable defendant would have looked. *Wilson*, 901 F.2d at 381.

The Court finds that Petitioner fails to establish prejudice. Petitioner repeats allegations and arguments already presented in the Motion for Judgment on Acquittal. ECF No. 186 at 19-25. He offers no new evidence or arguments in the instant Motion for how the nondisclosure was prejudicial. In the Order denying the Motion for Judgment on Acquittal, the Court found that the difference between Bailey's Grand Jury testimony and his trial testimony was "so minor that Defendant has not established it is prejudicial." ECF No. 191 at 10. Because Petitioner offers no new evidence in the instant Motion, the Court finds that he fails to establish prejudice.

Thus, Petitioner has no claim to prosecutorial misconduct for failing to disclose a transcript of Bailey's Grand Jury testimony.

### 4. Prosecutorial Misconduct for Witness Coaching

Petitioner's fourth claim is that the Government committed prosecutorial misconduct by coaching witnesses. Petitioner alleges that the Government induced false or misleading testimony from Calvin Bailey, Mustafa Mohammad, and other in-custody witnesses in exchange for reductions in sentences, in violation of Petitioner's Fifth Amendment right to Due Process. The Government does not address this claim in its Response.

Claims of prosecutorial misconduct other than *Brady* violations should be raised on direct appeal. *Reese*, No. 1:15CR32 at *4. Section 2255 motions "will not be allowed to do service for an appeal." *Sunal*, 332 U.S. at 178. For this reason, issues already fully litigated on direct

appeal may not be raised again "under the guise of a collateral attack." *Boeckenhaupt*, 537 F.2d at 1183. Issues already decided on direct appeal may only be raised in a § 2255 motion if there has been a "material change" in the law "between the direct appeal and the § 2255 motion." *Masters*, No. 91-6100 at *2; *see also Roane*, 378 F.3d at 396, n. 7.

Petitioner does not raise a *Brady* claim on this issue. The claim is thus procedurally defaulted if it could have been, but was not, raised on direct appeal. *Hernandez Portillo*, No. 1:07CR81 at *44. Petitioner raised this claim on direct appeal, mentioning it briefly without fully developing it, so the claim was not procedurally waived. Br. of Appellant at 29-30. The Fourth Circuit did not address the claim in its opinion, so the claim was not decided on direct appeal. Thus, Petitioner may raise this claim in the instant Motion.

The Court finds this claim to be without merit. To prevail on a due process claim of prosecutorial misconduct, a petitioner must show both misconduct and resulting prejudice. *United States v. Howell*, 584 F. App'x 108, 109 (4th Cir. 2014). "In assessing alleged prosecutorial misconduct," courts in the Fourth Circuit "ask 'whether the [misconduct] so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *United States v. Caro*, 597 F.3d 608, 624 (4th Cir. 2010) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). Petitioner fails to show misconduct because he presents no evidence to support the allegation that the Government "tampered with evidence and made inducements for testimony to win-at-all-cost." ECF No. 284-1 at 23. Petitioner also fails to show prejudice because he does not establish that the alleged misconduct was so grave that it "infected the trial with unfairness." *Caro*, 597 F.3d at 624. The Court has previously addressed these claims in the Memorandum Order on the Motion for Judgment on Acquittal and the Memorandum on the

Amended Motion to Dismiss. ECF Nos. 191 at 11-12, 236 at 7-8. Because Petitioner presents no new evidence or arguments here, the Court finds that this claim is groundless.

Thus, Petitioner has no claim for prosecutorial misconduct because of witness coaching.

## 5. Prosecutorial Misconduct for Failing to Disclose Other Exculpatory Evidence

Petitioner's fifth claim is for prosecutorial misconduct for withholding exculpatory information. Petitioner alleges that Detective Nunez[2] suppressed exculpatory information and the Government failed to disclose this information in violation of *Brady*. Petitioner quotes the testimony of J. Espinoza, who was the lead detective investigating the murders of Andre Horton and Julius Johnson before assigning the case to Nunez, another agent. ECF No. 284-1 at 9, 12. Espinoza testified at trial that a photo lineup was lost from the case file. *Id.* at 9. He said that there was a report in the file stating that one "Mr. Witts" could not identify several men in the photo, including Fuller; he said that he typed Fuller's name into his handwritten notes. *Id.* at 10. Espinoza also testified that Nunez rearranged the file after taking over the case. *Id.* at 11. Lastly, Espinoza said that he reviewed the file and it appeared to be there in its entirety. *Id.*

Petitioner alleges that "under Nunez's supervision the case file was lost including the photo lineup. . . . Nunez rearranged the file upon finding Fuller [sic] photo was now attached. Espinoza testifies photo was not included in the original file." *Id.* at 12. Petitioner insinuates that Nunez inserted the photo of Fuller into the file or allowed it to be inserted. Petitioner argues that this information is exculpatory because his link to "the Horton and Johnson murders are based solely around . . . corrupted Newport News homicide detectives." *Id.* Petitioner accuses the Government of violating *Brady* for not correcting the alleged errors or disclosing them prior to trial. *Id.* at 12, 14. Petitioner asserts that this resulted in a "miscarriage of justice." *Id.* at 13.

---

[2] Detective who took over the investigation of the Andre Horton and Julius Johnson murders when the case was assigned to him by J. Espinoza.

The Government argues that Petitioner fails to show prejudice because Espinoza testified at trial and Petitioner "fails to show how his ability to cross-examine Espinoza was impaired in any material respect." ECF No. 293 at 38.

As mentioned above, a petitioner must satisfy three criteria to establish a *Brady* violation: he must show that undisclosed evidence was (1) favorable because exculpatory or impeaching; (2) material; and (3) in the possession of the government. *Wilson*, 624 F.3d at 661. There is no *Brady* violation where undisclosed exculpatory information also lies in a source that is available to the defendant where a reasonable defendant would have looked. *Wilson*, 901 F.2d at 381.

The Court determines that Petitioner fails to establish a *Brady* violation. First, Petitioner fails to show that the evidence is exculpatory. He merely alleges, based on Espinoza's testimony, that Nunez inserted Fuller's photo into the case file. However, Espinoza's testimony does not support this allegation and Petitioner offers no further evidence. Second, Petitioner fails to establish materiality or prejudice because he fails to show undisclosed information that would have had a reasonable probability of affecting the outcome of the trial. Espinoza testified at trial as to the missing photo lineup and the rearranged case file, so this information was not suppressed. The material evidence, according to Petitioner, was that Nunez inserted Fuller's photo into the case file. However, this is not evidence; it is Petitioner's own unsubstantiated allegation. Third, Petitioner fails to establish that the Government possessed information that it failed to disclose. Espinoza's trial testimony disclosed information about Nunez's involvement in the case. Thus, Petitioner fails to establish the three elements of a *Brady* claim.

Further, the information that Petitioner seeks was available to him through Espinoza. Even if Petitioner did satisfy the elements of a *Brady* claim, there would be no *Brady* violation here because the undisclosed information lay in a source that is available to the defendant where

a reasonable defendant would have looked. *Wilson*, 901 F.2d at 381. Petitioner's Counsel could have attempted to elicit more information from Espinoza on cross-examination.

Thus, Petitioner has no claim of prosecutorial misconduct for failure to disclose other exculpatory evidence.

## B. Ineffective Assistance of Counsel

The second ground on which Petitioner bases his § 2255 Motion is the claim that he was denied his Sixth Amendment right to effective assistance of counsel. Petitioner was represented at trial by two attorneys, Jennifer Stanton ("Attorney Stanton") and Kim Crump ("Attorney Crump"). Petitioner claims ineffective counsel because (1) Counsel received discovery too late to make effective use of it; (2) Attorney Crump failed to competently cross-examine Calvin Bailey; (3) Counsel failed to adequately elicit and strategically use the forensic expert's testimony; (4) Attorney Crump advised Petitioner to seek dismissal rather than accept a new trial; and (5) Counsel failed to obtain evidence that Petitioner believed to be favorable to him.

## 1. Ineffective Assistance of Counsel at Trial for Failure to Effectively Use Materials

Petitioner's first claim is that Counsel were ineffective because they did not make effective use of certain Jencks and *Giglio* material that was disclosed prior to trial. Petitioner alleges that the Government was late in disclosing this material, as a result of which Counsel lacked sufficient time to read and analyze the material before trial. ECF No. 284-1 at 1-2, 29. Petitioner contends that because of this, Counsel failed to develop a strategy or effectively cross-examine Government witnesses. ECF No. 284-1 at 31-32. As support, Petitioner submits an affidavit from Attorney Stanton, in which Stanton states that she and Attorney Crump did not have adequate time to review the Jencks and *Giglio* materials, discuss them with Petitioner, or strategize about how to use them at trial. ECF No. 284-2 at 3-4, 6. Petitioner asserts that

Counsel fell below an "acceptable standard because . . . they were unprepared" and lacked a trial strategy. ECF No. 284-1 at 31-32.

The Government argues that Counsel had sufficient time and Petitioner did not suffer prejudice. ECF No. 293 at 40. As discussed above, the Government maintains that the Jencks and *Giglio* materials were not disclosed late because they were disclosed within the agreed-upon deadline of "no later than five calendar days before trial." *Id.* at 33. The Government argues that it was justified in withholding some Jencks material until later because of genuine concerns about witness tampering and witness security. *Id.* at 34.

As a general matter, a petitioner must satisfy two factors to establish ineffective assistance of counsel: "(1) that [counsel]'s performance fell below an objective standard of reasonableness, and (2) that [petitioner] was prejudiced by the deficiency because it created a reasonable probability that but for counsel's errors, the result of the proceeding would have been different." *Hoyle*, 33 F.3d at 418 (citing *Smith*, 931 F.2d at 244). "A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Id.* If a petitioner makes an insufficient showing on one prong, there is no reason for a court deciding an ineffective assistance claim to address both components of the inquiry. *Strickland*, 466 U.S. at 697. A court may begin with either prong of the test and "need not determine whether counsel's performance was deficient before examining the prejudice [allegedly] suffered by the defendant." *Id.*

The Court finds that Petitioner fails to establish the second prong of the *Strickland* analysis. As discussed above, the Court finds that the Government made timely pre-trial disclosures and was justified in withholding some material until later, pursuant to the Jencks Act. When this Court and the Fourth Circuit addressed the question of late disclosures, both found that Counsel had sufficient time to read the Jencks and *Giglio* materials disclosed prior to trial. It

is immaterial that Counsel "had to scramble" to prepare and did not use some materials as well as they might have done. ECF No. 284-1 at 31. "More than a general allegation of 'we were not prepared' is necessary to demonstrate prejudice," and this is the only allegation Petitioner asserts as the basis of prejudice. *United States v. LaRouche*, 896 F.2d 815, 825 (4th Cir. 1990). Because Petitioner fails to show prejudice, he fails to establish ineffective assistance of counsel.

Thus, Petitioner has no claim of ineffective assistance of counsel for failure to make effective use of some Jencks and *Giglio* materials.

## 2. Ineffective Assistance of Counsel for Attorney Crump's Failure to Competently Cross-Examine Calvin Bailey

Petitioner's second claim is that he lacked effective assistance of counsel because Attorney Crump failed to competently cross-examine Calvin Bailey. Petitioner argues that Crump was ineffective because she "froze up" during cross-examination "and lacked attentiveness." ECF No. 284-1 at 31. Petitioner states that her "performance was so awful . . . she asked for co-counsel to finish her cross." *Id.* Petitioner also argues that Crump was ineffective for not requesting a verbatim report of Bailey's Grand Jury testimony, asking for *in camera* review, and seeking to impeach Bailey. *Id.* at 36. For these reasons, Petitioner contends that Crump was "unable to do her duties as counsel" and therefore fell below an acceptable standard of competence. *Id.* at 35. He submits an affidavit from Attorney Stanton and an email exchange between Attorneys Stanton and Crump as support. ECF Nos. 284-2 and 284-3.

The Government argues that Petitioner fails to demonstrate that Attorney Crump's performance prejudiced him because he "fails to identify any specific impeachment that would have made a difference in this case." ECF No. 293 at 40.

As previously mentioned, a petitioner must satisfy two factors to establish ineffective assistance of counsel: that (1) counsel performed below an objective standard of reasonableness,

and (2) this prejudiced the petitioner "because it created a reasonable probability that but for counsel's errors, the result of the proceeding would have been different." *Hoyle*, 33 F.3d at 418. A court may begin with either prong of the test. *Strickland*, 466 U.S. at 697. If a petitioner makes an insufficient showing on one prong, there is no need to address both prongs. *Id.*

The Court finds that Petitioner fails to establish prejudice. Although Attorney Crump may have had some difficulty cross-examining Bailey, Petitioner fails to show that there was a reasonable probability that, but for Crump's errors, the result of the trial would have been different. *Hoyle*, 33 F.3d at 418. Because Petitioner fails to establish the second prong of the *Strickland* test, the Court does not need to consider the first prong. *Strickland*, 466 U.S. at 697.

Thus, Petitioner does not have an ineffective assistance of counsel claim for Attorney Crump's performance during the cross-examination of Calvin Bailey.

### 3. Ineffective Assistance of Counsel during Trial for Failure to Adequately Elicit and Strategically Use Forensic Expert's Testimony

Petitioner's third claim is that Counsel were ineffective at trial for failing to adequately elicit and use the testimony of forensic expert Mary Ashmore. Specifically, Petitioner alleges that (1) Counsel failed to adequately cross-examine Ashmore and (2) Counsel failed to form a strategy to use Ashmore's testimony to impeach Government witnesses Kenneth Matthews, Calvin Bailey, and Ashley Burnette. ECF No. 284-1 at 32, 36. Petitioner argues that during cross-examination, competent counsel would have asked Ashmore whether Fuller's blood was on the window at the scene of Christian Hatch's murder. ECF No. 284-1 at 32. Petitioner asserts that Ashmore's answer to this question could have been used to impeach Kenneth Matthews, Calvin Bailey, and Ashley Burnette, who testified that Fuller cut his face at the scene. ECF No. 184-1 at 32, 36. Petitioner also contends that effective counsel would have formed a

strategy for using Ashmore's testimony to impeach Kenneth Matthews, Calvin Bailey, and Ashley Burnette. *Id.* at 32.

The Government argues that Petitioner fails to establish deficient performance or prejudice resulting from Counsel's cross-examination of Ashmore. ECF No. 293 at 41. The Government also argues that Petitioner "fails to identify any admissible forensic testimony that could have established the points he is raising." *Id.* That is, Petitioner fails to name admissible testimony that would contradict the claim that he cut his face at the scene of Hatch's murder.

As previously mentioned, a petitioner must satisfy two factors to establish ineffective assistance of counsel: that (1) counsel performed below an objective standard of reasonableness, and (2) this prejudiced the petitioner. *Hoyle*, 33 F.3d at 418; *see also Strickland*, 566 U.S. at 693. The *Strickland* standard is not perfect representation, but reasonable competence in representing the accused. *Strickland*, 466 U.S. at 688-89. In applying this standard, substantial deference must be accorded to counsel's judgment. *Id.* at 689.

The Court finds that the cross-examination of Ashmore and the handling of Ashmore's testimony are decisions of trial strategy and do not rise to the level of ineffective assistance of counsel. The Court defers to Counsel's judgment in questions of trial strategy. *Strickland*, 466 U.S. at 689. The Court also finds that Counsel's decisions are reasonably competent and fall within the wide range of reasonable professional assistance under the circumstances. *Id.* at 688-89. Petitioner fails to establish an ineffective assistance claim because first, he fails to show that Counsel's decisions fall below an objective standard of reasonableness. Second, Petitioner fails to show prejudice because he does not demonstrate a "reasonable probability that . . . the result of the proceeding would have been different" if Counsel had questioned the forensic expert as Petitioner suggests. *Hoyle*, 33 F.3d at 418.

Thus, Petitioner does not have a claim of ineffective assistance of counsel for failure to adequately cross-examine Ashmore and use her testimony to impeach witnesses.

### 4. Attorney Crump's Ineffective Assistance of Counsel at Trial for Advising Petitioner to Reject New Trial

Petitioner's fourth claim is that he lacked effective assistance of counsel because Attorney Crump advised him to reject the Government's offer of a new and instead move for dismissal of the charges. ECF No. 284-1 at 35. After new Jencks and *Giglio* material came to light post-trial, Petitioner alleges that Crump advised him to reject the Government's offer of a new trial and seek only dismissal of charges. ECF No. 284-1 at 35. Petitioner argues that Crump was "ignorant to the appropriate legal remedies required for *Brady* violations" because "the remedy is a new trial." *Id.* Petitioner states that dismissal of charges is a "remedy [that] does not exist" for a *Brady* violation. *Id.* He contends that Crump fell below the standard of competence because she gave him inaccurate legal advice; "[a] competent attorney would have asked for a mistrial or advised her client of the realistic remedies found within *Brady v. Maryland.*" *Id.* Lastly, Petitioner claims that this advice prejudiced him because it resulted in him receiving "multiple life sentences." *Id.*

The Government argues that Petitioner fails both prongs of the *Strickland* test because he does not accuse the right attorney. ECF No. 293 at 42. The Government points out that Stanton, not Crump, moved for dismissal: "[i]t was only after Crump withdrew . . . that the defense took its final position repudiating the remedy of a new trial." *Id.* at 42. The Government cites Stanton saying that she and Petitioner had reviewed the issue and come to this decision. *Id.* at 43. In addition, the Government notes that in the affidavit attached to Petitioner's § 2255 Motion, Stanton does not support Petitioner's specific allegations. *Id.* First, the Government argues that Petitioner fails to establish deficient performance because he does not show that

26

Crump's advice to seek dismissal fell below an objective standard of reasonableness. *Id.* at 45. The Government notes that "the reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, . . . on informed strategic choices made by the defendant." *Id.* at 44-45 (quoting *Strickland*, 466 U.S. at 691). Second, the Government argues that Petitioner fails the prejudice prong because he does not demonstrate that a retrial would have affected the outcome of the proceeding. *Id.* at 47-48. Petitioner offers no new admissible evidence that would change the result, so the Government concludes that Petitioner was not prejudiced by rejecting the remedy of a new trial. *Id.* at 48.

Although Petitioner raised this issue on direct appeal, he may raise it again in this motion because it was not decided on appeal and is the proper subject of a § 2255 motion. An ineffective assistance claim may be raised "in the first instance on direct appeal if and only if it conclusively appears from the record that counsel did not provide effective assistance." *United States v. Galloway*, 749 F.3d 238, 241 (4th Cir. 2014). Otherwise, the claim must be raised in a § 2255 motion. *Id.* On direct appeal, the Fourth Circuit found that the record did not conclusively show either deficient performance or prejudice. ECF No. 279 at 14. Thus, the claim could not be decided on direct appeal and is the proper subject of the instant Motion.

As stated above, a petitioner must satisfy two factors to establish ineffective assistance of counsel: that (1) counsel performed below an objective standard of reasonableness, and (2) this prejudiced the petitioner. *Hoyle*, 33 F.3d at 418; *see also Strickland*, 566 U.S. at 693. The *Strickland* standard is not perfect counsel, but rather reasonable competence in representing the accused. 466 U.S. at 688-89. When applying this standard, substantial deference must be accorded to counsel's judgment. *Id.* at 689.

The Court concludes that Petitioner fails to establish the prejudice prong of the *Strickland* test for the reasons stated by the Government. Petitioner does not attempt to argue that the proceeding would have had a different result had he sought retrial instead of dismissal. Petitioner does not present any new admissible evidence that would, with reasonable probability, change the result of the proceeding. There is no need to address deficient performance because Petitioner's claim fails without a showing of prejudice. *Strickland*, 466 U.S. at 697.

Thus, Petitioner has no claim for ineffective assistance of counsel for Attorney Crump's advice to seek dismissal instead of a new trial.

## 5. Ineffective Assistance of Counsel for Failure to Obtain Evidence that Petitioner Believed to be Favorable

Petitioner's fifth claim is that Counsel were ineffective for failing to obtain evidence that Petitioner requested and believed was favorable to him. Specifically, Petitioner asked Counsel to (1) investigate the location of Erique Shaw and (2) subpoena Darius Crenshaw. First, Petitioner argues that Counsel were ineffective for not investigating the location of Erique Shaw. ECF No. 284-1 at 33. Petitioner contends that the Government's case relies on the theory that Petitioner killed Christian Hatch to avenge Shaw's murder by a rival gang, the Black P-Stones. *Id.* Petitioner notes that Marcellus Williams, a member of the Black P-Stones, testified to seeing Petitioner and Shaw together in 2007 as best friends. *Id.* Petitioner sees this as support for the Government's case against him. *Id.* Counsel tried to cast doubt on Williams during cross-examination by mentioning that Shaw lived in Tennessee in 2007, so Williams could not have seen Shaw with Petitioner. *Id.* Petitioner argues that this was a "dead-end statement," and that effective counsel would have hired an investigator to produce documentary evidence of where Shaw was in 2007. *Id.* Petitioner claims that he asked Counsel to hire an investigator but they

refused. *Id.* According to Petitioner, this prejudiced him because there was no evidence with which to impeach Williams, whose testimony bolstered the Government's case. *Id.*

Second, Petitioner claims that Counsel were ineffective for failing to subpoena Darius Crenshaw. *Id.* at 36. Petitioner argues that Crenshaw's testimony would have been favorable to him because it would have countered the Government's theory that Crenshaw killed Erique Shaw, causing Petitioner to have a dispute with members of the Black P-Stones. *Id.* According to Petitioner, this would have helped undermine the Government's case that he killed Christian Hatch. *Id.* Petitioner claims that he repeatedly asked Counsel to subpoena Crenshaw, but that they were too busy arguing with each other to attend to his request. *Id.* Petitioner contends that this deficient performance caused him to be found guilty, thus prejudicing him. *Id.*

The Government argues that Petitioner fails to show deficient performance and prejudice because he "fails to show that counsel was constitutionally required to seek to present the evidence as a matter of trial strategy, and the evidence could not have rationally altered the outcome of the case." ECF No. 293 at 49.

As stated previously, a petitioner must satisfy two factors to establish ineffective assistance of counsel: that (1) counsel performed below an objective standard of reasonableness, and (2) this prejudiced the petitioner "because it created a reasonable probability that but for counsel's errors, the result of the proceeding would have been different." *Hoyle*, 33 F.3d at 418. "A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Id.* *Strickland* requires reasonable competence in representing the accused, not perfect representation. 466 U.S. at 688-89. In applying this standard, a court must give substantial deference to counsel's judgment. *Id.* at 689.

The Court finds that these are matters of trial strategy that do not amount to ineffective assistance of counsel. Under *Strickland*, the Court must grant substantial deference to Counsel's judgment in matters of trial strategy, including Counsel's decisions not to investigate the location of Erique Shaw or subpoena Darius Crenshaw. *Strickland*, 466 U.S. at 688-89. The Court concludes that these choices do not fall below the *Strickland* requirement of reasonable competence in representing the accused. *Id.* Thus, Petitioner fails to show deficient performance. Petitioner also fails to show prejudice because he does not demonstrate a reasonable probability that the evidence he mentions would have changed the outcome of the case. *Hoyle*, 33 F.3d at 418.

Thus, Petitioner has no claim of ineffective assistance of counsel for failure to investigate Erique Shaw and subpoena Darius Crenshaw.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that it is clear from the pleadings, records, and filings that Petitioner is not entitled to relief. Accordingly, Petitioner's Motion to Vacate, Set Aside, or Correct his Sentence, pursuant to 28 U.S.C. § 2255, is **DENIED**.

Pursuant to Federal Rule of Appellate Procedure 22(b)(1), this Court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right. Petitioner has not set forth a specific issue that demonstrates a substantial showing of a denial of a constitutional right. Because Petitioner fails to demonstrate a substantial showing of a denial of a constitutional right, a Certificate of Appealability is **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this Order to all Parties.

**IT IS SO ORDERED**.

Norfolk, Virginia
July /| , 2018

Raymond A. Jackson
United States District Judge

30